Good afternoon, and may it please the Court. My name is Kiran Bari. I'm amicus to the Court in this matter. Yes, and we want to thank you for appearing pro bono as part of our pro bono representation project. Of course. Your Honors, the key elements of Mr. Singh's asylum claim are not disputed. Neither the IJ nor the government disputes his identity, the fact that he's a native citizen of India, that he is a member of the Sikh religion and a member of the Akali Dal party, that he was arrested twice as a result of that membership, and that during those tensions he was stripped naked, beaten, tortured, and detained for days. That is the core of his claim. None of his testimony on those elements are disputed. The only disputed elements go around the edges of that claim, and they don't cut into the core of the heart of the claim. Counsel, the immigration judge made a flat statement that he didn't believe the guy had ever even been arrested. Did he have any basis for that? The only basis for his not believing that he was arrested were the other inconsistencies that he cited that are not supported in the record or are not legitimate grounds. Well, there were documents, weren't there, that didn't conform what he said? There's one medical note, one medical record, that documents medical treatment that Mr. Singh does not remember receiving. But when confronted with that inconsistency, Mr. Singh said, if it had been in my heart that I had received the treatment, I would have told you, but I simply don't remember. That was the essence of his testimony. And the documents about the arrest were not prepared at the time of the actual arrest, as I understand it? That's true, and he admits... And they were not authentic? And they were not signed by the magistrate, and therefore they were not exactly as he represented either, were they? Actually, those were the judge's words, that they were not authentic, and that they were not signed by the magistrate at the time that they said they were. And those were not Mr. Singh's words. Well, I understand, but the judge had to look at them, and so he was the one reviewing the warrants. That's true. But all that Mr. Singh admitted to was that the documents were not prepared contemporaneously with the events, that they were prepared after the fact. And he admitted to that. He never said that they documented events that did not occur. In any case, whether or not a warrant issued in this case is not central to the heart of the claim. The important testimony is that he was arrested. Well, I guess my worry is, and I guess I'm going to the same issue, my worry is that we here have a credibility finding, and the credibility finding is made on certain issues. Now, what he alleges, if he has no credibility, is not accepted. That's true. So that's the worry that I have with what you started out with. We're really at a credibility finding here. That's true. And what you're really fighting is, what did the IJ do in his credibility finding? As I understand it, that was wrong in the credibility. Because if the IJ says, I don't believe one thing the guy says, then the facts that you now suggest are true are not necessarily true. I agree. But the credibility finding isn't supported by substantial evidence. Because if you look closely at the many grounds that the IJ cites, they either don't exist, they're not, they can't be determined from the record because the record is so incomprehensible and incoherent in places, and either that or the basis that the IJ cites is not a legitimate ground for an adverse credibility finding. There is only one inconsistency that the IJ cites that actually has evidence in the record. For example, the fact that his father had left for two years and came back and they only learned of his whereabouts after. The IJ cites that as a basis not to believe the immigrant. But there's no reasonable fact finder would determine that as a legitimate basis for adverse credibility. The fact that his father, that there's no evidence in the record as to who operated the farm while his father was gone for two years, these facts are not central to his asylum claim and they're not even evidence of a lack of credibility. The fact that his hair was cut once in 1993 and then he stated again later in his testimony that it was cut when he had to come to the United States, the IJ cites that as a ground not to believe him. Well, let me ask you another question that's just kind of a little bit off the track. We're really talking about adverse credibility. There were two reasons cited by the IJ that were not even challenged with the BIA, weren't there? Two reasons cited by the IJ. Two reasons for his incredibility. You might be thinking of the IJ. I don't want to put words in your mouth. Well, all I'm suggesting is when I read through, we're looking at adverse credibility and there were two reasons cited by the IJ that were not challenged at the BIA or challenged even any place along this particular situation, especially at the BIA. For instance, Singh failed to challenge, as I understand, his knowledge regarding the Akali Dal parties and his knowledge about the father's arrest. That wasn't even put in the BIA's brief. But what was put in the BIA's brief is that there is no evidence supporting any of the findings that the IJ determined. And the briefing, yes. Well, but failing to challenge those particular findings, doesn't that suggest then that if you fail to challenge, not exhausted, end of story? The argument might not have been a perfect argument in the BIA, but the conclusion was that none of the IJ's findings were supported by evidence in the record. And it's true that there are a few of his findings that are not explicitly talked about, but these were clearly indirectly at least raised and exhausted in the BIA. I am making exactly the same argument that the petitioner did in the BIA, which is that none of the IJ's findings are supported by sufficient evidence, except for the medical note, which doesn't go to the heart of the claim. Are you suggesting that we should, just because somebody says we're fighting credibility and we don't fight all the issues, that that nonetheless allows you to raise issues in this court that you don't raise to the BIA? What I'm suggesting is that I'm not bringing up any new legal claims, that the government was on notice that Mr. Singh is challenging every single one of the IJ's findings, and that that shouldn't, that should not prejudice him here. The heart of what I'm saying is that the IJ's findings are not supported by substantial evidence and that argument was made in the BIA. The argument was made that except for the medical note, which doesn't go to the heart of the claim, the IJ's findings are insubstantial and that upon closer look at the record, a record which is incoherent in many places and suffers from poor translation, that there's only one inconsistency left standing and had the IJ opinion been written as though there were only one inconsistency, then it would give the image of a much less problematic case. So the fact that eight of the nine grounds cited by the IJ have no evidence in the record is not something that was explicitly worded that way in the BIA, but it doesn't matter because the claim is the same and the claim is that there's no evidence supporting the determination. What's your best case for the idea that if you don't challenge an issue before the BIA, I nonetheless can review it on appeal? Your Honor, I don't think that there needs to be a case that says that because I think the issues were brought up in the BIA. Complete your thought and then I want to ask you something else. Okay. Why don't you go ahead. In the record, it says that he's married to an American citizen. Has he applied for adjustment of status? I don't know the answer to that question, but I know It's very odd. Very odd if he hasn't. Yes, well, his determination of the deportation decision has already been made, so I assume that any adjustment of status would be subject to the fact that he was issued as deported and also that he apparently, knowingly, frivolously applied for asylum. So under my understanding, Mr. Singh is permanently barred from applying for admission to the United States, whether he is here in the United States or whether he is back in India. I see. Under the statute. Thank you. Thank you. Thank you, counsel. We'll give you a couple minutes for rebuttal. Okay. Your time is up. Good afternoon. May it please the Court. My name is Linda Chang and I represent the Attorney General. The Court today should affirm the agency's denial of asylum, withholding of removal, and protection under the Torture Convention as found by the asylum officer, the IJ, and the BIA. Substantial evidence supports the IJ's determination that Petitioner, an alleged Sikh separatist recounting events from 1993 to 1995, was not credible based on nine discrepancies in the record that went to the heart of the claim. The individual findings cover all aspects of Petitioner's claim, ranging from the extent of his political involvement to the factual circumstances surrounding the two arrests and beatings at the heart of the claim to the veracity of the documentary evidence sent to him by his parents. The scope of these findings strengthens the reasonableness of the IJ's determination. Just to point out a few inconsistencies, Petitioner testified that he did not receive medical treatment after his first arrest on January 13, 1993, and that's on pages 76, 86, and 87. However, he presents a doctor's note that states that he was treated on January 21, 1993, on page 87 and 88. He admits that this date is correct on page 87, and this is not a minor inconsistency as Petitioner's counsel tries to argue because it goes to the heart of the claim. Why? He only alleges two events that constitute his past persecution. Therefore, this arrest, detention, and beating and subsequent medical attention he received from that beating goes to the heart of the claim. Right. But he submitted that the discrepancy actually goes the other way. It would show that he did seek that he was beaten. It would support his claim. Right? It would support his claim if it was a valid document. However, because it creates another inconsistency to the length of his detention, he claims that he was detained for 10 days after his first arrest on page 70, 86, and 102. But this doctor's note, which is Exhibit 9 on page 119, is dated 8 days later. Let me ask you another question about that particular issue. It's my understanding that there were some inconsistencies and Singh was somewhat confronted with the inconsistencies and said something about those inconsistencies. But I find nothing in the record to suggest that the I.J. addressed Singh's explanations or that the I.J. explained the significance of the inconsistency. And as I understand the statute or the case law, that's what the I.J. should have done. So I guess I'm having a tough time understanding how to help the I.J. when I didn't find any addressing the explanation that Singh gave or the significance of the inconsistency. In that matter, it doesn't seem to me that I can help the I.J., can I? The I.J. does discuss the significance in a way where he discounts the fact that these events are not  And that these events may have occurred as he alleged because of the pattern of inconsistencies throughout the testimony and in the application. The reason I'm concerned about that is we have held, as you know, that any alleged inconsistency and dates are really not very important in determining credibility. So I'm trying to figure out where I go to find the explanation in order to help the I.J. That is true of your case. It is also true in your case law that any one inconsistency that goes to the heart of the claim is enough to support an adverse credibility determination. If there's some explanation. Correct. And in this decision the I.J. has given nine different inconsistencies to hang his hat on. But there are a lot of them that really don't pan out with the record, I think. I'm just giving you my reaction to it. I think the I.J. was speculating on the authenticity without providing a reason. As you go through the case, I think many if not all of the inconsistencies are either explained or don't go to the heart of the claim. I wouldn't say that the I.J. speculated as to the authenticity of the documents before him. There wasn't a report from the forensics department. Therefore, with what he had before him, he had to make a determination. And since they weren't reliable or credible as it conflicted  petitioner's testimony, he was forced to make a decision and he decided that it was not reliable and, therefore, fraudulent. He could not have disregarded these documents or given them a credible review. You know, Counsel, I read the transcript. In a lot of cases, I don't read the whole transcript. I did in this case and I was struck with how poor the translation must have been. The answers to so many of the questions were complete non-sequiturs, so you don't really know what the translator said to Mr. Singh and how he understood the question and what the answer was. Didn't you find this one of the more problematic transcripts that you had to work with? You know, all of us work with a lot of them and a lot of them are very complicated. I don't think that problems in translation affected the credibility determination because it was still  from what was intelligible that these discrepancies existed. Moreover, this is not an issue that counsel has brought up before to the board at the appropriate time when it could have been fixed as a procedural defect and therefore has waived and exhausted this claim. Let me go back to the documents because you have seemed to concentrate on the documents. It seems to me, given our precedent, that I've got to have something in the record that the IJ finding one allegedly fraudulent document is not enough. We've got to have evidence that the petitioner knew the document was fraudulent when the other evidence supported his claim. In this particular situation, this petitioner did not think the document was fraudulent. In fact, he admitted the document was not made contemporaneously and contained incorrect information. His only explanation, he didn't know what it said. So, given that, I then looked for the IJ's explanation again. How does the IJ explain what he finds and what this deals with credibility? And I again, found no explanation from the IJ. How does it deal with credibility? Because Singh doesn't say the document is made at the time it was made when it was supposed to be. He says it's made after the fact and it was sent to me thereafter. And had I known about it, I would have tried to do something. I'm just giving you what I have. So, again, I'm looking, what does the IJ say to explain his credibility finding and I find nothing. First, I would say that willful blindness is not a defense to submitting any and all documents to the court to let them sort it out on their own. Let me interrupt you there for a second. I think I'm probably headed in the same direction that Judge Smith is. Here's the document that apparently is the key document. So the IJ asks him about the document. Here's the answer. Yes, I admit that, but I don't know. Treatment was done by a doctor for the first time. Not done was not indiscernible. And the papers over there I brought them like that and I had it indiscernible by extracting them from the paper. How are we to review that? I can't make any sense out of that. Nor can I understand because the IJ didn't make an explanation of why that wasn't an adequate explanation of what the document was about. You're accusing the IJ of fraud, but when you look down to what exactly the document is and what the explanation is, it's very difficult to see from the record that it's a clear cut case. I understand your concern. However, the regulations do put the burden of proof and persuasion on the Petitioner to present reliable and credible evidence. I understand that, but where's the IJ's explanation of this so we as an appellate body can review it? It may not be that clear in the IJ's decision, but based on the IJ's explanation. If you were the IJ, I'm sure you would have been clear as a bell on what you put down, but it's difficult in this case. I'm saying that only to give you an opportunity to respond to our concerns. Thank you. I think IJ also took into account the rest of his testimony and the fact that he did not present credible testimony up to that point. Even if you take his medical note as credible, it creates a different scenario, a different situation, and therefore there are two different accounts already on the record. The IJ says he was inconsistent, but here's what he says. The police arrested indiscernible when he was arrested. They would come and ask me do you know where your father is. That is an issue. If you raise the general issues about credibility, as long as the issues presented before the board, that may be sufficient for exhaustion. If that issue is deemed exhausted, where does that leave you? You know. I mean, we'd have to deal with that on the merits, right? If we hold that it was sufficiently exhausted for the purposes of our court. And if you deem that the evidence then compels the conclusion that the evidence before you compels a contrary conclusion,    the merits on asylum? Right. I think that that is the best way to do it. If we can do it. I think he was asking does the government's position that assuming that his testimony is true, do you think that he qualifies asylum or not? I can't speculate that because the agency never made a determination on the merits. However, I would say that given the nine inconsistencies, even if  some that are not supported or explained thoroughly, there is enough in there to support an adverse credibility determination by the I.J. Would the agency sustain the adverse credibility determination? Any further questions? I think we have your argument in hand. Thank you very much for your argument. We'll give you a couple minutes for rebuttal. Thank you, Your Honor. Briefly, I would like to just consider the breakdown in communication that happened in this case and that even through the poorly translated and bad record, Mr. Singh did testify consistently with his declaration and was able to communicate the elements, the core elements, the very little bits that are coherent and seem to be in proper English and proper translation are consistent with his declaration. Mr. Singh has a wife and child and has been living here. If this testimony is fraudulent, then he will be permanently barred from returning to the United States. To respond to the government's argument, the intelligent parts of his testimony are consistent with his declaration and just based on his declaration he is eligible for asylum. But this is something that the BIA can determine on remand when this court reverses the IJ's credibility determination. Counsel, could I ask you, if the frivolous finding were removed, is he then eligible to apply for adjustment status? I believe that the bar is five years. If he is ordered deported but did not file a fraudulent application, then the statute under 1182 says that he is barred for five years and not permanently. If the finding of the fraudulent application states that he is permanently barred from ever returning to the United States or applying for admission. Now, the government seems to concede that the one inconsistency that is that this court that they are requesting this court determine exists is the fact that the fact that he testified ten years ago does not go to the heart of his claim. Whether or not he received medical treatment after he was tortured and remembered that and how long his detention was is not the core of his asylum claim. So, if he testified inconsistently with a medical record that he submitted, if he had knowingly submitted those documents and knew they were fraudulent, it would have been in his best interest to lie and to lie consistently with the evidence that he had submitted a fraudulent application. And the IJ's determination must be specific and cogent to this issue. I understand your argument on that, but I think the government has a point in the sense that in some cases if you're just submitting fraudulent documents, even if it's the documents, even if your testimony is, say, less favorable than the documents, that it just indicates that there is an attempt to defraud the court. I mean, that's the government's argument. It doesn't make any difference whether it  fraudulent document that says that if there is no knowledge of the fraud of the documents and the testimony is otherwise consistent internally, which it was in this case, that there is no grounds for an adverse credibility determination. And that's so this case is precisely the case as was the case in Yemeni Bear where there was a medical record affirmatively found upon analysis to be counterfeit that the immigrant did not know about but that was supposed to document medical treatment she received after being tortured. And in that case the court said and held that the I'm sorry I'm over my time. Let's go ahead and finish your thoughts. In that case the court held that that was not a ground for adverse credibility and that's exactly what we have here. Thank you. Thank you counsel. Thank you To release this case with this case with her case versus singletary. Judge Fletcher you'll just have to let me know if you want to take a break. Usually I would consult here. I think maybe after this case we might take a very short tip. Just for those people arguing the next case and the following we will take a ten minute recess after the argument in this case.
judges: Fletcher B. , Thomas, Smith R.